Tagged Opinion



**ORDERED in the Southern District of Florida on January 04, 2010.**

_____
John K. Olson, Judge
United States Bankruptcy Court

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division**
www.flsb.uscourts.gov

**In re**:

**Jerk Machine, Inc.,**

    Debtor.
_____/

**Jerk Machine, Inc.,**

    Plaintiff,

**-v-**

**Bank of America, N.A.,**

    Defendant.
_____/

Case No. 08-21962-BKC-JKO

Chapter 11

Adversary No. 08-1591-JKO

**ORDER:
OVERRULING BANK OF AMERICA'S OBJECTION [DE 75];
APPROVING IN PART AND DISAPPROVING IN PART FEE APPLICATION OF
COUNSEL FOR JERK MACHINE, INC. [DE 68];
AND DIRECTING BANK OF AMERICA TO PAY ATTORNEYS' FEES**

On October 9, 2009, counsel for Plaintiff Debtor Jerk Machine, Inc. filed an application [DE 68] requesting $45,760.58 in fees and $724.85 in costs for prosecuting the above-styled fraudulent transfer adversary proceeding. Defendant Bank of America, N.A. filed an objection to the fee application on October 13, 2009 [DE 75], and Jerk Machine replied to Bank of America's objection on October 14, 2009 [DE 78]. A hearing was conducted October 15, 2009 at 1:30 p.m. and I took the matter under advisement. For the reasons stated below, the fee application will be approved in part and disapproved in part.

*Attorneys' Fee Entitlement Not Waived Despite Failure to Plead*

Jerk Machine did not plead attorneys' fees in its First Amended Complaint [DE 6]. Under Florida law, this constitutes a waiver of the claim for attorneys' fees. *Capital Factors, Inc. v. Gen. Plastics Corp. (In re Gen. Plastics Corp.)*, 170 B.R. 725, 734 (Bankr. S.D. Fla. 1994) (Schmetterer, J.) (quoting *Stockman v. Downs*, 573 So. 2d 835, 837 (Fla. 1991)).[1] However, I cannot dispose of this matter on that basis because:

> Where a party has notice that an opponent claims entitlement to attorneys' fees, and by its conduct recognizes or acquiesces to this claim or otherwise fails to object to the failure to plead entitlement, that party waives any objection to the failure to plead a claim for attorneys' fees.

*Id.* at 735 (quoting *Stockman*, 573 So. 2d at 837). Bank of America's objection to the fee application does not mention Jerk Machine's failure to plead attorneys' fees. Therefore, Jerk Machine's entitlement to attorneys' fees is not waived despite its failure to plead that entitlement.

---

[1] The exception for frivolous or unfounded litigation does not apply to the facts before me.

*Bank of America's Reasons for Objecting to the Fee Application*

Bank of America argues that Jerk Machine's request for attorneys' fees should be denied in its entirety because:

(1)  Jerk Machine "does not cite any provision of the Bankruptcy Code that authorizes an award of attorney fees"

(2)  Jerk Machine fails "to point to a specific statutory authority or contractual provision that would support its entitlement to attorney fees" and

(3)  Jerk Machine "should be judicially estopped from relying on provisions under the Promissory Note in support of its claim for fees" because "[t]he basis for the judgment avoiding the payment to Bank of America was Jerk Machine's allegation in its Complaint that the payment satisfied a debt of the Principals which was not owed by Jerk Machine. While the allegation was false (Jerk Machine signed the Promissory Note), Jerk Machine should be estopped from benefitting and enforcing language of [the] very Contract . . . it successfully eschewed."

Def.'s Obj. [DE 75], at 1-2.

The first argument is unpersuasive. Lack of statutory authority does not preclude enforcement of a contractual agreement regarding attorneys' fees. *Citizens First Nat'l Bank v. Hunter (In re Hunter)*, 243 B.R. 824 (Bankr. M.D. Fla. 1999) (Proctor, J.). The Eleventh Circuit has explicitly held that a prevailing litigant in bankruptcy litigation may collect attorneys' fees from his opponent if authorized by either federal statute *or* an enforceable contract between the parties. *Cadle Co. v. Martinez (In re Martinez)*, 416 F.3d 1286, 1288 (11th Cir. 2005). Jerk Machine's failure to cite a Bankruptcy Code provision in support of its fee application has no bearing on its entitlement

to such an award because Jerk Machine relies upon the language of a promissory note which both parties signed.

The second argument advanced by Bank of America (that Jerk Machine failed to point to specific statutory authority or contractual provision) is similarly unpersuasive because the fee application submitted by Jerk Machine's counsel specifically referenced the language of the promissory note as well as Fla. Stat. § 57.105(7). Bank of America even said so in its objection:

> In support of its entitlement to an award of attorney fees, Jerk Machine relies both on Fla. Stat. § 57.105(7) and on the contract between Jerk Machine and Bank of America, namely the attorney fees provision contained in the December 14, 2009, Promissory Note . . .

Def.'s Obj. [DE 75], at ¶ 14. Therefore, I can only presume that Bank of America argues a "failure to point to a specific statutory authority or contractual provision," *Id.* at ¶ 1., because it believes that Jerk Machine's reliance upon § 57.105(7) is "misplaced." *Id.* at ¶ 15. Specifically, Bank of America contends that the reciprocal statutory provision of § 57.105(7) does not apply because "the basis of Jerk Machine's adversary proceeding was to avoid a purported fraudulent transfer, and not an attempt to collect a debt." *Id.* at ¶ 19. In other words, Bank of America believes the language of the attorneys' fee provision in the promissory note is essentially for <u>its benefit only</u>. *See id.* at ¶¶ 17-19. Jerk Machine would therefore only be entitled to attorneys' fees if it had been trying to enforce the promissory note rather than eschew it. *See id.* This argument, however, runs counter to both the underlying public policy of reciprocality articulated by § 57.105(7) and the substantial body of case law interpreting the statute.

If Bank of America had successfully defeated Jerk Machine's fraudulent transfer complaint, it could have properly claimed its entitlement to attorneys' fees under the language of the promissory

note and § 57.105(7). This is dispositive because, as the Eleventh Circuit stated in *Martinez*, "Florida law says that you cannot have [a] one-sided attorney's fee contract provision." *Martinez*, 416 F.3d at 1290. *Martinez* looked to the way Florida bankruptcy courts were, for a time, in a relative vacuum of guidance on whether § 57.105(7) includes bankruptcy litigation which is arguably not "any action to *enforce* a contract." Fla. Stat. § 57.105(7) (emphasis added); *see Martinez*, 416 F.3d at 1289 (citing *In re Maestrelli*, 172 B.R. 368, 371 (Bankr. M.D. Fla. 1993).[2] Bankruptcy courts looked to the policy of reciprocality articulated in *TransSouth Fin. Corp. v. Johnson*, 931 F.2d 1505 (11th Cir. 1991), and concluded that "any action" includes debtors who have prevailed in dischargeability proceedings, notwithstanding the arguable distinction. *Martinez*, 416 F.3d at 1289 (citing *In re Mowji*, 228 B.R. 321, 323-24 (Bankr. M.D. Fla. 1999); *In re Eckert*, 221 B.R. 40, 45-46 (Bankr. S.D. Fla. 1998)*; In re Woolacott*, 211 B.R. 83, 87 (Bankr. M.D. Fla 1997); *Pichardo v. United Student Aid Funds, Inc. (In re Pichardo)*, 186 B.R. 279, 283 (Bankr. M.D. Fla. 1995). This decision to adhere to reciprocality in bankruptcy litigation was then ratified by the Eleventh Circuit in *Martinez*, which held:

> To deny a debtor attorney's fees and costs for prevailing in a dischargeability proceeding brought by a creditor, where those same fees would have been available under state contract law for the creditor had it prevailed, would contravene the primary purpose of the bankruptcy statute, which is "to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh."

---

[2] " . . . it would be stretching the holding of *TranSouth* to conclude that it equally applies to debtors in litigation which is not a civil suit in the orthodox sense but merely a determination of dischargeability, *vel non*, of a debt pursuant to § 523(c) of the Bankruptcy Code in which the only provision which permits the award of attorney's fees to a debtor is pursuant to § 523(d), a section not applicable . . . Thus, the mutuality of remedy provisions of Fla. Stat. § 57.105 . . . does not apply in the present instance notwithstanding *TranSouth*." *In re Maestrelli*, 172 B.R. 368, 371 (Bankr. M.D. Fla. 1993).

*Martinez*, 416 F.3d at 1290-91 (citing *TranSouth*, 931 F.2d at 1508).  While *Martinez* addressed dischargeability litigation and not fraudulent transfer litigation, the core lesson of the intervening bankruptcy court decisions which expanded upon *TranSouth* and gave rise to *Martinez* is: "Florida law says that you cannot have [a] one-sided attorney's fee contract provision." *Martinez*, 416 F.3d at 1290.  I accordingly hold that the attorneys' fee provision in the promissory note before me cannot be one-sided under Florida law.

Bank of America's third argument (that Jerk Machine should be estopped from benefitting and enforcing language of the very contract it successfully eschewed) requires some discussion because the argument seems equitable on its face.  But however facially appealing the argument, bringing a fraudulent transfer complaint does not in itself estop a bankruptcy trustee from claiming attorneys' fees under § 57.105(7).

Bankruptcy Code § 548 provides that a debtor in possession may avoid any transfer of property made within two years before the petition date if there was: (A) actual intent to hinder, delay, or defraud creditors; or (B) a constructive fraudulent transfer.  Constructive fraudulent transfers of property interests occur when the debtor received less than reasonably equivalent value in exchange and the debtor: (I) was insolvent on the date of the transfer; (II) was left with unreasonably small capital for then-existing or anticipated business activities; (III) intended to incur or believed it was incurring debts beyond its ability to timely repay; or (IV) made the transfer to or for the benefit of an insider under an employment contract and not in the ordinary course.  *See* 11 U.S.C. § 548(B).  A fraudulent transfer complaint is not *per se* inconsistent with a claim for contractual attorneys' fees because nothing in § 548 requires the trustee to allege, *e.g.*, nullity of the

contract *in toto*. Rather, § 548 merely enables a trustee to avoid a transfer of property made pursuant to that contract if the transfer is within the statute.[3]

Further, even if Jerk Machine alleged that it did not sign the promissory note with Bank of America, it would not be estopped from seeking attorneys' fees under Fla. Stat. § 57.105(7). Bank of America has cryptically asserted that it could have sought attorneys' fees had it prevailed, *see* Def.'s Obj. [DE 75], at ¶ 17-19, and "Florida law says that you cannot have [a] one-sided attorney's fee contract provision." *Martinez*, 416 F.3d at 1290. It is actually Bank of America which is estopped from denying liability for the debtor's attorneys' fees because it claimed that the fee provision was for its benefit only. *See* Def.'s Obj. [DE 75], at ¶ 17-19. Read in light of Florida law, this statement is a concession that Jerk Machine is reciprocally entitled to attorneys' fees under § 57.105(7). *See Martinez*, 416 F.3d at 1290-91 ("Here, the debtor prevailed, and there was a contractual right to attorney's fees under the 'Business Note and Security Agreement' contract between the debtor and creditor when it was read in light of the Florida's [sic] attorney's fee reciprocity statute, which was incorporated into the contract by operation of law.")

### *The Amount of Attorney's Fees to be Awarded*

Bankruptcy courts have broad discretion in determining the amount of attorneys' fees to award as compensation for services performed in connection with bankruptcy proceedings. "Deference is especially given to an award of attorneys' fees granted by a bankruptcy judge who has not only presided over the . . . hearing regarding fees, but also has had the opportunity to observe the performance of the attorney[s] during the course of the bankruptcy proceedings." *In re Red*

---

[3] Section 548 of course covers obligations incurred as well as property transferred.

*Carpet Corp.*, 902 F.2d 883, 891-92 (11th Cir. 1990) (citing *In re U.S. Golf Corp.*, 639 F.2d 1197, 1207-08 (5th Cir. 1981). For the reasons stated below, I exercise my discretion to award attorneys' fees at 66% and costs at 100%.

Jerk Machine's fee application encompasses, *inter alia*, an October 6, 2009 hearing on Bank of America's Motion to Vacate Default Judgment [DE 58]. During opening remarks by counsel for Bank of America, counsel for Jerk Machine coughed the word "Bull$%^" into the counsel table microphone. The scene was reminiscent of the Interfraternity Disciplinary Council hearing in National Lampoon's Animal House,[4] and the court reporter understandably omitted the poorly-enunciated but nevertheless very audible remark from the official transcript. *See* Tr. 10/06/09 Hr'g [DE 64], at 5-6.

Further, counsel for Jerk Machine submitted two pleadings in response to Bank of America's objection. One was submitted the day before the October 15, 2009 hearing [DE 78] and the other at the start of the hearing [DE 85], but the timeliness of neither is an issue because Bank of America's objection [DE 75] was filed just two days prior (leaving Jerk Machine very little time to respond). Notwithstanding this rush, Jerk Machine's initial reply to Bank of America's objection [DE 78] was of poor quality for federal practice and the second pleading submitted at the October 15, 2009 hearing [DE 85] did not include even basic formatting.

Finally, Bank of America points to duplicative motions filed by Jerk Machine and claims the fee amount "seems excessive to the approximate $162,000 [default] judgment obtained." Def.'s Obj. [DE 75], at ¶¶ 23-24. Jerk Machine retorts that 72% of the fees "were caused by Bank of America's dilatory tactics and mostly for filing a seventy-six (76) page motion two (2) business days before

---

[4] Funny in the movie, not so amusing in court.

the hearing [on the Motion to Vacate Default Judgment] causing [Jerk Machine's counsel] to work throughout the weekend on formulating a timely and effective response." Pl.'s Reply [DE 78], at ¶ 11. Given the stakes from Jerk Machine's perspective - (end this now vs. drawn-out litigation) - I find that $32,947.62 for a marathon weekend response to a seventy-six page Motion to Vacate Default Judgment is not necessarily an unreasonable proposition. However, because the conduct of Jerk Machine's counsel and the quality of their submissions lacked the caliber of professionalism customary in federal litigation, I exercise my discretion to award 66% of the requested attorneys' fees ($45,760.58 x 0.66 = $30,201.98) and 100% of the requested costs ($724.85). In arriving at this lodestar calculation, I find that 181.9 hours of work was reasonable, but the blended hourly rate of $251.57 was excessive given the quality of work performed. I accordingly calculate Jerk Machine's attorneys' fees at the more appropriate hourly rate of $166.04.

It is accordingly **ORDERED** that:

(1) Bank of America's Objection **[DE 75]** is **OVERRULED**;

(2) the Fee Application of Counsel for Plaintiff Debtor Jerk Machine, Inc. **[DE 68]** is **APPROVED IN PART** and **DISAPPROVED IN PART**; and

(3) Bank of America, N.A. shall pay to Jerk Machine, Inc. $30,201.98 in fees and $724.85 in costs for a grand total of **$30,926.83**.

# # #

Copies to:

Chad T. Van Horn, Esq.  
Northmark Building, Suite 208  
33 Northeast 2nd Street  
Fort Lauderdale, FL 33301  
(954) 765-3166  
(954) 765-3382 (fax)  
CvanHorn@dmb-law.com

Miguel M. Cordano, Esq.  
J. Randolph Liebler, Esq.  
Courthouse Tower - 25th Floor  
44 West Flagler Street  
Miami, FL 33130  
(305) 379-0400  
(305) 379-9626 (fax)  
mc@lgplaw.com  
jrl@lgplaw.com

Attorney Van Horn is directed to serve copies of this Order upon all interested parties not listed above and file a certificate of service with the Clerk of Court.